115 Ill.2d 65 (1986)
503 N.E.2d 343
THE ENVIRONMENTAL PROTECTION AGENCY, Appellant,
v.
THE POLLUTION CONTROL BOARD et al. (Waste Management, Inc., Appellee).
No. 63062.
Supreme Court of Illinois.
Opinion filed December 19, 1986.
*66 Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Robert E. Davy, Jr., Assistant Attorney General, of Chicago, of *67 counsel), for the appellant.
Dixie L. Laswell and Andrew H. Perellis, of Gessler, Wexler, Flynn, Laswell & Fleischmann, Ltd., of Chicago, for appellee Waste Management, Inc.
Judgment affirmed.
JUSTICE MORAN delivered the opinion of the court:
Waste Management, Inc. (WMI), applied to the Environmental Protection Agency (the Agency) for an operating permit to open a new hazardous-waste-disposal trench at its Environmental Sanitary Landfill, Inc. (ESL), site in Elwood, Illinois. WMI also applied for 599 supplemental permits to dispose of certain hazardous-waste products, known as supplemental waste streams, into the trench. Finally, WMI applied for an operating permit to install a new groundwater-monitoring network to surround the ESL site. The Agency issued the operating permit for the groundwater-monitoring network subject to numerous conditions which WMI found objectionable, but denied both the operating permit for the new trench and the supplemental-waste-stream permits.
WMI sought review of the Agency's actions before the Pollution Control Board (the Board) pursuant to section 40 of the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1983, ch. 111 1/2, par. 1040). The Board struck certain conditions attached to the groundwater-monitoring permit, and ordered the Agency to issue an operating permit for the trench and the 599 supplemental-waste-stream permits. The Agency appealed directly to the appellate court pursuant to section 41 of the Act (Ill. Rev. Stat. 1983, ch. 111 1/2, par. 1041). The appellate court affirmed the Board's order. (138 Ill. App.3d 550.) We granted the Agency's petition for leave to appeal under Rule 315 (87 Ill.2d R. 315).
The issues presented for review are: (1) whether the Board is bound to apply the manifest-weight-of-the-evidence *68 standard in reviewing Agency decisions denying permit applications; (2) if not, whether the Board's findings that the Agency erred in denying the permits were contrary to the manifest weight of the evidence; (3) whether the appellate court erroneously interpreted the Act as tolerating some groundwater pollution provided that the site is not inherently unmanageable; and (4) whether the Board erred in striking certain conditions that the Agency attached to the groundwater-monitoring permit.
The Agency contends that its decision denying a permit must be affirmed on the Board's review under section 40 of the Act unless it is contrary to the manifest weight of the evidence. The Agency asserts that by not requiring the Board to apply the manifest-weight-of-the-evidence standard, the appellate court relegated the Agency to a fact-gathering or investigative agency and thereby usurped its function by making the Board the permit-granting authority. In support of this argument, the Agency cites this court's decision in Landfill, Inc. v. Pollution Control Board (1978), 74 Ill.2d 541. The Agency, however, misapprehends our decision. Landfill concerned the validity of certain rules of the Board which allowed third parties to institute proceedings to revoke a permit that the Agency had previously granted. In Landfill, this court noted that the Act established two administrative agencies with distinct functions in the overall regulatory scheme:
"The Board's principal function is to adopt regulations defining the requirements of the permit system (Ill. Rev. Stat. 1975, ch. 111 1/2, pars. 1005(b), 1039). The Agency's role is to determine whether specific applicants are entitled to permits (Ill. Rev. Stat. 1975, ch. 111 1/2, par. 1039). * * * If the Board were to become involved as the overseer of the Agency's decision-making process through evaluation of challenges to permits, it would become the permit-granting *69 authority, a function not delegated to the Board by the Act.
The one statutory exception to the Board's quasi-legislative role in relation to permits is in instances in which the Agency has denied a permit (Ill. Rev. Stat. 1975, ch. 111 1/2, pars. 1005(d), 1040). Explicit procedural requisites are established for Board review of permit denials (Ill. Rev. Stat. 1975, ch. 111 1/2, par. 1004), and Agency appearance at such permit-denial hearings is mandated (Ill. Rev. Stat. 1975, ch. 111 1/2, par. 1004(f))." 74 Ill.2d 541, 557.
Unlike the situation this court addressed in Landfill, the case at bar involves the Board's review of the Agency's denial of a permit. Consequently, this case falls squarely within the "one statutory exception to the Board's quasi-legislative role in relation to permits" that was referred to in Landfill. In like cases, it is the Board, not the Agency, which must determine whether a permit should issue. In Environmental Protection Agency v. Pollution Control Board (1981), 86 Ill.2d 390, this court again found that the Board must determine whether, in such cases, a permit should issue.
The Agency also relies upon cases holding that the Board must apply the manifest-weight standard in reviewing a local governing body's decision granting or refusing to grant approval for a facility's location under section 39.2 (Ill. Rev. Stat. 1983, ch. 111 1/2, par. 1039.2). The Agency has failed, however, to analyze or even discuss the applicability of those cases to the Board's review of the Agency's decision denying a permit under section 39 (Ill. Rev. Stat. 1983, ch. 111 1/2, par. 1039). We find those cases inapposite. The permit process under sections 39(a) and 40(a)(1) (Ill. Rev. Stat. 1983, ch. 111 1/2, pars. 1039(a), 1040(a)(1)) differs from the process of local governmental approval of site locations under sections 39.2 and 40.1 (Ill. Rev. Stat. 1983, ch. 111 1/2, pars. 1039.2, 1040.1). Section 39.2(d) requires the local *70 governing body to hold at least one public hearing which forms the basis for any appeal of the decision to the Board under section 40.1 (Ill. Rev. Stat. 1983, ch. 111 1/2, pars. 1039.2(d), 1040.1(a), (b)). This hearing must be transcribed. Ill. Rev. Stat. 1983, ch. 111 1/2, par. 1040.1(a).
Unlike the procedures required under sections 39.2 and 40.1, the permit process under sections 39(a) and 40(a)(1) does not require the Agency to conduct any hearing. Consequently, no procedures, such as cross-examination, are available for the applicant to test the validity of the information the Agency relies upon in denying its application. As the appellate court noted, the procedure before the Agency has none of the characteristics of an adversary proceeding. The safeguards of a due process hearing are absent until the hearing before the Board. We therefore agree with the appellate court's holding that the Board is not required to apply the manifest-weight test to its review of the Agency's decision denying a permit.
The appellate court properly recognized that its duty under section 41(b) of the Act (Ill. Rev. Stat. 1983, ch. 111 1/2, par. 1041(b)) was to evaluate all the evidence in the record, and to determine whether the Board's findings that the evidence did not support the denial of the permits were contrary to the manifest weight of the evidence. The court did not reweigh the evidence or substitute its judgment for that of the Board. Instead, it conducted a thorough and independent review of the record and concluded that the Board's determinations were not contrary to the manifest weight of the evidence.
Our responsibility in reviewing the judgment of the appellate court, as was that of the appellate court in reviewing the findings and conclusions of the Board, is to evaluate all of the evidence to determine whether the Board's findings were against the manifest weight of the *71 evidence. Having conducted our own review of the evidence in the record, we agree with the appellate court's holding that while there is some conflict in the evidence, the Board's decision is not contrary to the manifest weight of the evidence.
Next, the Agency asserts that the appellate court erroneously interpreted the Act as tolerating some groundwater pollution as long as the site is not inherently unmanageable. Contrary to the Agency's contention, the Board did not find ESL to be a leaking landfill. The Board merely held that "the preponderance of professional testimony, especially by those who conducted independent studies, indicates that the site's characteristics are not such that it is inherently unmanageable * * *." (Emphasis in original.) Moreover, the Agency, in disregard of Rule 341(e)(7) of this court (103 Ill.2d R. 341(e)(7)), fails to cite any authority for its assertion of error. We therefore find the Agency's argument to be without merit.
The final issue presented is whether the Board erred in striking certain conditions that the Agency attached to the groundwater-monitoring permit. The Agency criticizes the appellate court for upholding the Board's decision which ordered the Agency to remove certain conditions and requirements in the groundwater-monitoring permit which WMI found objectionable. The Agency fails, however, to even specify which stricken conditions it seeks to place in issue, stating in its brief: "There is no need to discuss these permit conditions in detail. No case law exists specifically supporting or undermining any particular condition." Moreover, the Agency again fails to cite any authority for its assertion of error. Instead, the Agency argues in conclusory fashion that it presented ample evidence to support its conditions and that the conditions were within its broad scope of authority to impose conditions on permits.
*72 Having conducted our own review of these conditions, we agree with the appellate court, which affirmed the Board's finding that the conditions imposed usurped the Board's rule-making authority, the public's right to participation, and WMI's due process right to contest findings which would trigger administrative action.
For the foregoing reasons, the judgment of the appellate court is affirmed.
Judgment affirmed.