ALTON PACKAGING CORPORATION, Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.,* Respondents-Appellees.

Fifth District    No. 5—86—0477

Opinion filed September 25, 1987.—Rehearing denied December 7, 1987.

Richard J. Kissel, Jeffrey C. Fort, and Daniel F. O'Connell, all of Martin, Craig, Chester & Sonnenschein, of Chicago, and Karl K. Hoagland, Jr.,

and Alphonse J. Pranaitis, both of Hoagland, Maucker, Bernard & Almeter, of Alton, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, of Chicago, and James L. Morgan, Assistant Attorney General, of Springfield, of counsel), for respondents.

JUSTICE LEWIS* delivered the opinion of the court:

Alton Packaging Corporation (Alton) appeals from an order of the Pollution Control Board (Board), in which the Board affirmed the Environmental Protection Agency's (Agency's) denial of Alton's application for renewal of an operating permit at its mill in Alton, Illinois. The Agency had denied Alton's application for renewal of the permit because it had found that certain boilers at Alton's mill had been the major contributors to a violation of the Agency's sulfur dioxide standard for the area during 1984 and had concluded that these boilers might cause violations in the future. On appeal from the Board's order affirming the Agency's denial, Alton contends that the Board's findings that there was a violation of the Agency's sulfur dioxide standard in Alton in November 1984 and that continued operation of the Alton mill might cause that standard to be exceeded in the future were contrary to the manifest weight of the evidence. We affirm.

Alton is a fully integrated company engaged in the manufacture and sale of paperboard and paperboard packaging products. In its manufacture of paperboard products, Alton operates a mill located at Alton, Illinois, which requires the use of steam produced by boilers. Two of these boilers, Nos. 6 and 7, are pulverized, wet bottom boilers, in which coal is pulverized to a fine powder and blown into the boilers. Exhaust air from these boilers is eventually vented into the atmosphere through two large stacks, which contain no devices to control sulfur dioxide emissions. It is these boilers that are the subject of this permit appeal.

On January 25, 1983, Alton filed an application with the Agency for renewal of its operating permit for the boilers in question. In a related proceeding, Alton, on April 23, 1983, filed a petition for variance and site specific relief from the Board's Rule 204(f) (now codified as 35 Ill. Adm. Code 214.141 (1985)), which had been revised to establish an emission limitation for sulfur dioxide of 1.8 pounds per million BTU (lbs/mmbtu). The Board subsequently dismissed the variance and

---

*Justice Lewis replaced Justice Jones, who retired after the cause was taken under advisement.

site specific proceeding for lack of prosecution, but, upon appeal to this court (see *Alton Packaging Corp. v. Pollution Control Board* (1986), 146 Ill. App. 3d 1090, 497 N.E.2d 864), the cause was reinstated and application of the revised emission limitation to the Alton mill was stayed pending the outcome of the variance and site specific proceeding.

In November 1984, following Alton's application for renewal of its operating permit, the Agency recorded two excursions or exceedances of the 24-hour primary ambient air quality standard for sulfur dioxide at its monitor in Alton, Illinois. Pursuant to Board regulation (codified at 35 Ill. Adm. Code 243.122 (1985)), more than one excursion from this standard of 0.14 parts per million (ppm) in a one-year period constituted a violation. The two excursions occurred on November 6 and 7, 1984, with a 24-hour average reading of 0.148 ppm, and on November 25 and 26, 1984, with a reading of 0.159 ppm. In December 1984 the Agency issued an air quality bulletin identifying Alton as a primary contributor to these excursions, and, in May 1985, the Agency completed a modeling study which confirmed that Alton's boilers had been the "likely cause" of the November 1984 violation of the air quality standard for sulfur dioxide in the Alton area.

On August 27, 1985, the Agency denied Alton's request for renewal of its operating permit, setting forth two reasons. The first reason, that the boilers in question had an average emission rate of 4.9 lbs/mmbtu, in excess of the newly revised emission limit of 1.8 lbs/mmbtu, was subsequently rendered inapplicable when the variance proceeding was reinstated and the applicability of the new limit was stayed as to Alton. The second reason for denial was stated as follows:

> "2. The Agency's ambient $SO_2$ monitor in Alton recorded a violation of the primary 24 hour $SO_2$ standard during 1984. Based upon a recent study performed by the Agency, Boilers 6 and 7 appear to have been the major contributor to this violation. Boilers 6 and 7 thus may cause violations of 35 Ill. Adm. Code 201.141 and 243.122(a)(2)."

Alton then filed an appeal with the Board from the Agency's denial pursuant to section 40 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1040). In a hearing before the Board, Alton called two Agency employees as adverse witnesses. John Shrock, an environmental protection specialist with the Agency, testified that he had prepared the Agency's May 1985 study with regard to the alleged excursions of November 1984. He stated that it

was not the purpose of this report to predict future excursions but only to determine the major contributors to the reported excursions. Upon examination by the Agency, Shrock testified that similar excursions may be possible in the future if Alton were allowed to operate at the limits they were operating at during the previous excursions, since the weather conditions present on those dates were not unusual.

Alton further called David Kolaz, manager of the Agency's Ambient Air Quality Monitoring section. Kolaz testified concerning the range of accuracy of the Agency's monitors, explaining the procedures and requirements for recalibrating its monitors. Upon examination by the Agency, Kolaz described the precision and accuracy checks that are performed on the Agency's monitors and stated that under United States Environmental Protection Agency (USEPA) guidelines, the recorded values were not to be adjusted based upon accuracy and precision checks, but were to be reported as measured on the Agency's monitors.

As a final witness the Agency called Patrick Dennis, a senior analysis engineer for the Agency who had reviewed Alton's permit application and recommended that it be denied. Dennis explained the reasons given by the Agency for the permit denial and stated that either reason alone would have been sufficient to recommend denial. He further stated that Alton had provided no information to the Agency to show that operation of its boilers would not cause future exceedances of the air quality standard for sulfur dioxide.

Upon cross-examination by Alton, Dennis testified that he had been aware of a modeling study prepared by Murray and Trettel and submitted by Alton as part of the variance proceeding, but stated that this study had not been considered in the context of the permit proceeding because it had not been prepared according to USEPA guidelines and because it had been part of the variance proceeding that was dismissed by the Board. Dennis stated that he had placed no reliance on the Murray and Trettel study, which was not included in the Agency record in the permit appeal, but had based his recommendation to deny Alton's permit request on the modeling study performed by the Agency to determine the source of the two excursions in November 1984, as well as information provided by Alton as to coal usage.

Following the hearing, the Board, on April 24, 1986, affirmed the Agency's denial of the operating permit for Alton's mill. In stating the basis for its decision the Board found, contrary to Alton's contentions regarding the accuracy of the Agency's recorded excursion

on November 6 and 7, 1984, that there had been an excursion on that date and that Alton had failed to show that the Agency's monitor by which the November 1984 excursions were recorded was faulty. The Board further found that

"based on the information received from the excursion study [of May 1985], the Agency could reasonably conclude that Alton's boilers may cause a violation of 35 Ill. Adm. Code 201.141 and 243.122(a)(2)."

The Board noted that while Alton had questioned the predictive capacity of the Agency's excursion study, it had "offer[ed] no data to suggest that the Agency's conclusions were unreasonable." The Board continued:

"In this permit appeal, the burden is not on the Agency to prove that a violation will occur in the future. Rather, the burden is on Alton to prove that a violation will not occur in the future. Alton has not provided the Board with any information which would enable the Board to conclude that a violation of the primary $SO_2$ 24-hour standard will not occur in the future. Based on the record before the Agency, the Board finds that the information provided by Alton to the Agency fails to demonstrate that issuing a permit for Alton's mill will not cause a violation of the Act and Board regulations. Therefore, the Board affirms the Agency's denial of a permit for Alton's mill."

On direct appeal to this court (see Ill. Rev. Stat. 1985, ch. 111½, par. 1041), Alton contends that the Board's decision affirming the Agency's permit denial was contrary to the manifest weight of the evidence and should be reversed. In particular, Alton maintains that there was an insufficient basis for the Board to conclude that continued operation of Alton's mill may cause future violations of air quality standards in view of testimony at the hearing that the Agency's May 1985 modeling study was not intended to be predictive of future violations and testimony that the alleged excursion of November 6 and 7, 1984, fell within the margin of error of the Agency's monitor. Alton asserts, therefore, that the evidence failed to support the second reason given in the permit denial and that the Agency's denial should be reversed.

Section 39(a) of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1039(a)), under which Alton's permit application was made, states in pertinent part:

"When the Board has by regulation required a permit for the *** operation of any type of facility ***, the applicant

shall apply to the Agency for such permit and it shall be the duty of the Agency to issue such a permit *upon proof by the applicant that the facility \*\*\* will not cause a violation of this Act or of regulations hereunder.*" (Emphasis added.)

■■■ Under section 39, Alton, as permit applicant, had the burden of showing that issuance of a permit for operation of its mill would not cause a violation of the Board's air quality standard for sulfur dioxide. Upon appeal to the Board from the Agency's denial of such permit, the burden of proof was again upon Alton. Ill. Rev. Stat. 1985, ch. 111½, par. 1040(a)(1); see *EPA v. Pollution Control Board* (1983), 118 Ill. App. 3d 772, 455 N.E.2d 188.

In the hearing to determine whether Alton had met this burden, the Board considered testimony elicited by Alton from the Agency's employees regarding the accuracy of the recorded excursions in the Alton area during November 1984. Alton, in its examination of these employees, sought to discredit the Agency's measuring and recording methods. The Board, however, rejected Alton's assertions that the recorded measurement of November 6 and 7 did not constitute an excursion and found that there had, in fact, been an excursion. The Board thus determined that Alton had failed to carry its burden of refuting the factual basis for the Agency's conclusion that there may be a violation of Board regulations in the future. The Board further noted that while Alton had questioned the predictive capacity of the May 1985 modeling study, this study was an adequate basis for the Agency's conclusion that Alton was a major contributor to the excursions in question.

■■■ Upon appeal, now, from the Board's decision to this court, Alton has the heavy burden of showing that the Board's decision affirming the Agency's denial was contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1985, ch. 111½, par. 1401(b).) While the Board was required to determine, based upon the evidence in the hearing before it, whether the permit should issue, this court, in reviewing the Board's decision, must evaluate the evidence in the record and determine whether the Board's findings were contrary to the manifest weight of the evidence. (*EPA v. Pollution Control Board* (1986), 115 Ill. 2d 65, 503 N.E.2d 343 (hereinafter *Waste Management, Inc.*). That a different conclusion might be reasonable is insufficient; the opposite conclusion must be evident. (See *Willowbrook Motel v. Pollution Control Board* (1985), 135 Ill. App. 3d 343, 481 N.E.2d 1032.) This court, thus, must not reweigh the evidence nor substitute its judgment for that of the Board. *EPA v. Pollution Control Board* (1986), 115 Ill. 2d 65, 503 N.E.2d 343.

■ We have so examined the record before the Board and have concluded that there was sufficient evidence to support the Board's findings. Notwithstanding Alton's attempts to establish the unreliability of the Agency's recorded measurements, there was evidence that the Agency's monitor was operating satisfactorily and that the measurements were properly reported without adjustment as required by USEPA guidelines. In light of the evidence of Alton's role in the violation of November 1984 and Alton's failure to show that no such violation would occur in the future, the Board was justified in upholding the Agency's permit denial. We, accordingly, affirm the decision of the Board.

■ We note in passing Alton's alternative argument that the Board's decision should be reversed and remanded for further hearing to afford Alton the opportunity to introduce new evidence that was not part of the record before the Agency. Alton maintains that the decision of *EPA v. Pollution Control Board* (1985), 138 Ill. App. 3d 550, 486 N.E.2d 293, which has since been affirmed in *Waste Management, Inc.*, referred to above, changed the law with respect to the requirements of the hearing before the Board in a permit appeal so that the parties are no longer limited to the record before the Agency but are entitled to a hearing *de novo* before the Board with the admission of new evidence. It is Alton's position that it should have a new hearing in which to submit evidence of its own modeling study prepared by Murray and Trettel even though this study had not been presented to the Agency in the permit proceeding.

We find no merit in Alton's position, because, rather than changing the law regarding the admission of evidence in Board hearings, it appears that the *Waste Management, Inc.* decisions merely restated the law regarding the standard of proof applicable in such hearings. While both the appellate and the supreme court opinions discussed the opportunity afforded the permit applicant, during the Board hearing, to challenge the reasons given by the Agency for denying such permit by means of cross-examination and the receipt of testimony "to test the validity of the information [relied upon by the Agency]" (*EPA v. Pollution Control Board* (1986), 115 Ill. 2d 65, 70, 503 N.E.2d 343, 345), the courts' language should not be construed to allow the supplementing of the record with new matter not considered in the Agency's denial of the permit application. (*Cf.* 115 Ill. 2d 65, 503 N.E.2d 343 (Board's review of Agency's permit denial limited to consideration of material relied upon by Agency).) We believe Alton was afforded an adequate opportunity here to challenge

the reasons given by the Agency for its permit denial and we, accordingly, find no basis upon which to remand the case for further hearing.

For the reasons stated in this opinion, we affirm the decision of the Board.

Affirmed.

KARNS, P.J., and KASSERMAN, J., concur.