E S G WATTS, INC., Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—91—0384

Opinion filed January 31, 1992.

Immel, Zelle, Ogren, McClain & Costello, of Springfield (Kevin T. McClain, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for respondent Pollution Control Board.

JUSTICE HAASE delivered the opinion of the court:

The petitioner, E S G Watts, Inc., filed an application to construct an industrial waste storage and treatment facility under part B of the Resource Conservation and Recovery Act of 1976 (42 U.S.C. §6901 *et seq.* (1988)) (RCRA). The Illinois Environmental Protection Agency (IEPA) denied the permit, and Watts appealed the decision to the Illinois Pollution Control Board (Board). The Board affirmed the IEPA's denial of the permit. Watts appeals from that decision.

On February 11, 1987, Watts, a subsidiary of Watts Trucking Services, Inc., filed applications for a part B RCRA permit and an NPDES permit with the IEPA to construct a facility in Rock Island, Illinois, for the storage and treatment of hazardous waste. The proposed facility would store and treat hazardous wastes that are water based or aqueous in nature such as wastes containing heavy metals, dichromate, cyanide, sulfide, oil, and solvent residues. The complex would be designed to treat and discharge 100,000 gallons of wastewater per day.

Watts' application for the RCRA permit indicated that the treated wastewater was to be discharged into the City of Rock Island's storm sewer system, and from there it eventually would be discharged into the Mississippi River. On August 12, 1988, the IEPA issued a tentative draft RCRA permit. At that time, the IEPA informed Watts that

it would issue a final decision on the permit after a public comment period.

In November 1988, Watts' consulting engineer notified the IEPA that Watts had changed its planned method of disposal. The engineer indicated that the original method of disposal (discharging the wastewater into the city's storm sewer) was not feasible since the storm sewer system was interconnected with the sanitary sewer system. Watts noted that it was therefore going to pursue plans for routing the discharge through a private pipeline into the Mississippi River. This method, however, required an easement from the City of Rock Island to extend the pipeline under a city street.

On December 19, 1988, the city expressed an intent to deny Watts' request for an easement to discharge the treated wastewater. On September 6, 1989, the IEPA asked Watts whether it wished to pursue the permit, and, if so, to provide information regarding: (1) the status of its effort to obtain the easement; (2) the other options available for discharge; and (3) the date when it planned to make a final decision on its proposal. After obtaining two extensions of time to respond, Watts replied that it had been "dragging its feet," but still wished to pursue the permit. Watts further stated that it hoped to be issued a permit that would allow it to "truck the water from the facility or use direct discharge, leaving both options open."

On February 9, 1990, the IEPA wrote Watts requesting that it provide information on the final disposition of the wastewater generated by the treatment facility. In the letter, the IEPA also stated if Watts did not respond within 30 days with the requested information, the IEPA might deny the permit.

Watts submitted written responses on March 9 and March 30, 1990. Thereupon, Watts informed the IEPA that arrangements for discharge still had not been made. Watts also stated that it did not feel that the lack of the resolution of the discharge method should affect the approval process for the permit.

On March 29, 1990, Watts formally petitioned the city for an easement and that request was denied. On June 29, 1990, the IEPA denied the petitioner's request for the part B RCRA permit. The denial letter stated the following:

> "The permit is denied because the application has been deemed to be incomplete, on the grounds that the applicant has not demonstrated there is an acceptable means to dispose of the treatment plant wastewater. The disposition of the treated wastewater has significant potential to cause environmental damage if disposed of improperly and is an integral part of be-

ing able to provide a service as a hazardous waste treatment facility. The Agency does not feel that issuance of a permit without a feasible discharge point, is protective of the environment. Without a feasible discharge point, the facility operations could result in the indefinite storage of wastes at the site if the company was unable to resolve its problem."

Thereafter, Watts filed an appeal with the Board. Following a hearing, the Board affirmed the IEPA's denial of Watts' permit request. Watts appeals from that decision.

Watts first argues on appeal that the IEPA failed to deny the permit within the statutory review period set forth in section 39(a) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 1039(a)). It further contends that the effect of such inaction is that the permit is deemed issued.

In response, the respondents argue that the statutory time limitation is not applicable to RCRA permits and that even if it is, Watts waived the issue by failing to raise it previously.

■ We agree with the respondents that the time limitation set forth in section 39(a) of the Act does not apply to RCRA permits. A request for an RCRA permit is a more complicated procedure and is governed exclusively by section 39(d) of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1039(d)). Section 39(d) does not place any time limits on the applications for such permits, except to the extent "filing requirements and procedures" are adopted by the Agency.

Moreover, we find that even assuming *arguendo* that the time limit was applicable, the issue was waived by Watts' failure to clearly raise it before the Board rendering the decision from which the appeal was taken. (See *Smith v. Department of Professional Regulation* (1990), 202 Ill. App. 3d 279, 559 N.E.2d 884.) We further find that application of the waiver doctrine is especially appropriate here, since it was Watts that caused the delay by failing to submit a completed application.

Watts next argues that its incomplete application was not a proper basis on which the IEPA could deny the permit.

It is well settled that the petitioner has the burden of proving that the operation of the facility would not cause a violation of the Environmental Protection Act. (*Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 503 N.E.2d 343.) Board regulations state that an RCRA permit may be denied if the application is incomplete in that the applicant fails or refuses to correct deficiencies in the application. (35 Ill. Adm. Code §705.123 (1985).) On review, the appellate court will uphold the Board's deci-

sion unless it is against the manifest weight of the evidence and a different conclusion than that reached by the Board is evident. *Willowbrook Motel v. Pollution Control Board* (1985), 135 Ill. App. 3d 343, 481 N.E.2d 1032.

■ Here, we find that Watts failed to meet its burden. Watts failed to establish that the grant of the permit would not violate the Act. The Board could reasonably conclude that the method of discharge of the treated wastewater was an integral part of the proposed operation of the facility. If Watts was unable to dispose of hazardous waste (treated wastewater) stored on its premises, it would be reasonable to assume that this would create some environmental risk. The Board is not required to speculate in order to determine whether Watts would be able to comply with the Act.

Watts attempts to intermingle its problems in obtaining an easement from the City of Rock Island with the IEPA's denial of Watts' permit. Watts cites *County of Lake v. Pollution Control Board* (1983), 120 Ill. App. 3d 89, 457 N.E.2d 1309, and *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493, in support of its argument that the IEPA should not be allowed to deny a permit if the method of discharge was subject to a local zoning ordinance.

Here, the cases relied on by Watts do not apply. The proposed facility was not subject to a local zoning ordinance. Furthermore, we note, as the supreme court noted in *Village of Carpentersville v. Pollution Control Board* (1990), 135 Ill. 2d 463, 553 N.E.2d 362, that the Act has been amended so that it no longer preempts local zoning ordinances. Accordingly, Watts' reliance on *Carlson* and *County of Lake* is misplaced.

Watts also argues that the IEPA erroneously failed to send it a formal letter of deficiency prior to denying the permit application.

■ We note that Board regulations provide that if the IEPA determines that an application is incomplete, it shall notify the applicant and list the information necessary to make the application complete. (35 Ill. Adm. Code §705.122(c) (1986).) In the instant case, the IEPA wrote to Watts on February 9, 1990, asking Watts to provide information relating to the final disposition of the wastewater. The IEPA further informed Watts that it had repeatedly asked Watts to resolve the issue and that the permit might be denied if the requested information was not provided. Under these circumstances, we find that the Board correctly found that although a formal deficiency letter would have been better, the text of the February 9 letter served to place Watts on notice that the Agency was requiring more information on the method of discharge and that it was essential to its final determi-

nation. Accordingly, we conclude that the IEPA substantially complied with the notice of deficiency requirement.

Based on the foregoing, we affirm the decision of the Pollution Control Board.

Affirmed.

GORMAN and SLATER, JJ., concur.