FRIENDSHIP FACILITIES, INC., *et al.*, Plaintiffs-Appellants, v. REGION 1B HUMAN RIGHTS AUTHORITY, Guardianship and Advocacy Commission of the State of Illinois, *et al.*, Defendants-Appellees.

Third District   No. 3—87—0360

Opinion filed March 25, 1988.

Law Offices of Peter F. Ferracuti, P.C., of Ottawa (Mark A. Schnindler, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roger Derstine, Special Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Friendship Facilities (Friendship), is a not-for-profit corporation which provides a sheltered workshop and residential care services to handicapped adults at its facility located in Ottawa, Illinois. Plaintiff, John Sullivan, was employed by Friendship as superintendent and held this position for 20 years.

Defendant, Guardianship and Advocacy Commission (Guardianship), is an executive agency of Illinois State government. The Region 1B Human Rights Authority is a division of the Commission established pursuant to the Guardianship and Advocacy Act (Ill. Rev. Stat. 1985, ch. 91½, par. 701 *et seq.*). The remaining individual defendants are current or former members of the Region 1B Human Rights Authority who participated in the investigation giving rise to this litigation.

The plaintiffs brought this action to enjoin public release of a report compiled by the defendants. The report pertains to an investigation of Friendship and John Sullivan by the defendants. Both parties filed motions for summary judgment; the trial court granted the defendants' motion for summary judgment on count V of the plaintiffs' complaint, which sought a declaration that the Guardianship and Advocacy Act (Ill. Rev. Stat. 1985, ch. 91½, par. 701 *et seq.*) is unconstitutional. The plaintiffs' application for interlocutory appeal pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308) was granted.

On appeal, the plaintiffs contend that: (1) the Guardianship and Advocacy Act (the Act) is an unconstitutional delegation of legislative power to an executive agency of State government; (2) the Act is an unconstitutional delegation of legislative authority; and (3) the Act is unconstitutionally vague.

The controversy in the instant case concerns a grant of power to the Guardianship and Advocacy Commission and its regional branches pursuant to the Guardianship and Advocacy Act (Ill. Rev. Stat. 1985, ch. 91½, par. 701 *et seq.*). Pursuant to the Act, a regional authority is empowered to conduct investigations upon its own initiative if it has reason to believe that the rights of an eligible person have been violated. (Ill. Rev. Stat. 1985, ch. 91½, par. 715.) The authority can then enter the premises of a service provider and conduct inspections. (Ill. Rev. Stat. 1985, ch. 91½, par. 717.) The authority may conduct hearings (Ill. Rev. Stat. 1985, ch. 91½, par. 720), issue subpoenas, and then make public the findings of its investigation (Ill. Rev. Stat. 1985, ch. 91½, par. 726). The plaintiffs argue that there is no legislative guidance provided in the Act to determine who an eligible person is

and what that person's rights are. The plaintiffs also argue that the Act does not provide for judicial or appellate review.

The two sections of the Act at issue in this case are as follows:

" 'Rights' includes but is not limited to all rights, benefits, and privileges guaranteed by law, the Constitution of the State of Illinois, and the Constitution of the United States." (Ill. Rev. Stat. 1985, ch. 91½, par. 702(h).)

" 'Eligible persons' means individuals who have received, are receiving, have requested, or may be in need of mental health services ***." (Ill. Rev. Stat. 1985, ch. 91½, par. 702(g).)

The plaintiffs contend that both these provisions vest absolute discretion in the Commission and the regional human rights authority to determine and define both eligible persons and the rights of those persons.

■ A comprehensive analysis of the delegation of legislative authority issue was undertaken in *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875. In *Stofer*, the court held that a delegation of legislative authority is constitutional only if the legislature provides sufficient identification of the following:

"(1) The *persons* and *activities* potentially subject to regulation;

(2) the *harm* sought to be prevented; and

(3) the general *means* intended to be available to the administrator to prevent the identified harm." (Emphasis in original.) (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 372, 369 N.E.2d 875, 879.)

Thus, the issue in this case is whether the Act satisfies the requirements set forth in *Stofer*.

■ When deciding *Stofer*, the court stated that the term "sufficient identification" is itself ambiguous. Consequently, when deciding what is "sufficient identification" under the *Stofer* requirements, courts need to examine the particular facts and circumstances of each case. As a guide to examining the facts, the *Stofer* court presented a number of guidelines. With regard to the first requirement, that the legislature provide sufficient identification of the persons and activities potentially subject to regulation, the court stated that the legislature must do all that is practical to define the persons and activities which may be subject to the administration's authority. (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875.) The court stated that this effort is needed to put interested persons on notice of the possibility of administrative actions affecting them.

In the present case, the Act defines "eligible persons" as:

"[I]ndividuals who have received, are receiving, have requested, or may be in need of mental health services, or are 'developmentally disabled' as defined in the federal 'Developmental Disabilities Services and Facilities Construction Act' [42 U.S.C. §6000 *et seq.* (1982)] \*\*\* or 'persons disabled' as defined in 'An Act in relation to vocational rehabilitation of disabled persons' [Ill. Rev. Stat. 1985, ch. 23, par. 3432 *et seq.*]." (Ill. Rev. Stat. 1985, ch. 91½, par. 702(g).)

The Act defines three separate categories of eligible persons. The first category is individuals who have received, are receiving, have requested, or may be in need of mental health services. (Ill. Rev. Stat. 1985, ch. 91½, par. 702(g).) Within this first group the operative "eligibility" factor is mental health "services." " 'Services' includes but is not limited to examination, diagnosis, evaluation, treatment, care, training, psychotherapy, pharmaceuticals, after-care, habilitation, and rehabilitation \*\*\*." Ill. Rev. Stat. 1985, ch. 91½, par. 702(e).

The second group of persons "eligible" to be the subject of a regional authority's investigation is the developmentally disabled. (Ill. Rev. Stat. 1985, ch. 91½, par. 702(g).) Section 2(g) of the Act incorporates the definition set forth under Federal law, which defines a developmental disability as

"a severe, chronic disability of a person which: (A) is attributable to a mental or physical impairment or combination of mental and physical impairments; (B) is manifested before the person attains age twenty-two; (C) is likely to continue indefinitely; (D) results in substantial functional limitations in three or more of the following areas of major life activity: (I) self care, (II) receptive and expressive language, (III) learning, (IV) mobility, (V) self-direction, (VI) capacity for independent living, and (VII) economic self-sufficiency; and (E) reflects the person's need for \*\*\* interdisciplinary, or generic care, treatment, or other services which are of lifelong or extended duration and are individually planned and coordinated." 42 U.S.C. §6001(7) (1982).

Finally, the third group of "eligible" persons is those "disabled" within the meaning of the enabling statute of the Illinois Department of Rehabilitation Services. (III. Rev. Stat. 1985, ch. 91½, par. 702(g).) The Department's enabling act describes this category as including

"any person who, by reason of a physical or mental impairment, is or may be expected to be totally or partially incapacitated for independent living or gainful employment." Ill. Rev. Stat. 1985, ch. 23, par. 3432.

■ Although "eligible persons" is broadly defined, the categories

set forth within the Act are sufficient to identify the persons subject to the regulation. The classes and numbers of persons subject to mental health services are numerous. It is unrealistic to expect the legislature to list each eligible person under the Act. Further, the complexity of the subject to be regulated may put practical limitations upon the legislature's ability to identify all of the forms the activity may take. (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875.) Thus, in light of the complexity of the mental health field and the number of potentially eligible persons, it can be determined that the legislature has sufficiently identified the persons subject to the Act's regulation.

The plaintiffs also argue that the Act does not adequately define the rights of the eligible persons to be protected. The plaintiffs contend the Act (Ill. Rev. Stat. 1985, ch. 91½, par. 702(h)) defines the rights in an unlimited and open-ended manner. Further, the plaintiffs allege that the language included in the statute allows the Human Rights Authority to define and impose higher or more stringent standards than those provided by the United States and Illinois Constitutions and laws.

■ Under the second of the three tests of the validity of a legislative delegation of power enunciated in *Stofer*, there must be a "sufficient identification of *** the harm sought to be prevented." (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 372, 369 N.E.2d 875, 879.) In identifying the harm sought to be prevented, the legislature may use somewhat broader, more generic language than in the first element. (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875.) It is sufficient if, from the language of the statute, it is apparent what types of evil the statute is intended to prevent. *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875.

■ The Guardianship and Advocacy Act was enacted to safeguard the rights of disabled persons. (Ill. Rev. Stat. 1985, ch. 91½, par. 701; see *Human Rights Authority v. Miller* (1984), 124 Ill. App. 3d 701, 464 N.E.2d 833.) In examining the rights to be protected, the statute defines "rights" as "includes but is not limited to all rights, benefits, and privileges guaranteed by law, the Constitution of the State of Illinois, and the Constitution of the United States." (Ill. Rev. Stat. 1985, ch. 91½, par. 702(h).) Although broad, this definition of rights is sufficient under *Stofer*. To expect the legislature to list each individual right to be safeguarded is unrealistic. A reading of the statutory section indicates the types of evil the statute is designed to prevent.

■ The third of the three tests of the validity of a legislative delegation of power enunciated in *Stofer* is that there must be sufficient identification of the means available to the regional authority to prevent the identified harm. (*Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875.) The legislature did not grant the regional human rights authorities any regulatory or licensing powers. (Ill. Rev. Stat. 1985, ch. 91½, par. 701 *et seq.*) Thus, its capacity to safeguard the rights of handicapped persons is limited and specific. Under the Act, the authorities have the power to make public their findings and recommendations (Ill. Rev. Stat. 1985, ch. 91½, par. 726), they do not, however, have the power to require the persons or organizations to alter practices or otherwise remedy rights violations. Ill. Rev. Stat. 1985, ch. 91½, par. 701 *et seq.*

The legislature also afforded the Human Rights Authority a number of incidental powers which relate to its investigatory process. (Ill. Rev. Stat. 1985, ch. 91½, par. 717.) These powers include: the power to enter and inspect the premises (Ill. Rev. Stat. 1985, ch. 91½, par. 717), the access to records (Ill. Rev. Stat. 1985, ch. 91½, par. 718), and the power to conduct hearings and compel by subpoena the attendance and testimony of such witness and the production of such materials as are necessary or desirable for its investigation. (Ill. Rev. Stat. 1985, ch. 91½, par. 720.) These investigatory powers are limited within the Act, however. Ill. Rev. Stat. 1985, ch. 91½, par. 701 *et seq.*

Based upon the above-mentioned provisions, and a clear reading of the Act, it can be determined that the means available to the authority to prevent the identified harm have been sufficiently identified.

The plaintiffs argue that this case is similar to that of *Melbourne Corp. v. Hearing Board on Denial or Revocation of Licenses for Nursing Homes* (1973), 14 Ill. App. 3d 589, 302 N.E.2d 729. In *Melbourne*, the court held that an ordinance of the City of Chicago was invalid as an unconstitutional delegation of legislative power. The ordinance in question gave absolute authority to the board of health to adopt rules and regulations governing the operation and conduct of nursing homes and sheltered care homes. The plaintiff had applied for a license to operate a nursing home but his application was denied for failure to comply with the board's rules and regulations. The court held that a delegation of power to an administrative agency dealing with questions affecting public health is valid only if limited by standards to govern the administrative body in the exercise of its power. The ordinance in question allowed the board of health to adopt whatever rules and regulations it wished in the administration of nursing

homes in Chicago with no legislative guidance. The board had absolute discretion to determine what the law should be. Therefore, the ordinance was an impermissible grant of legislative authority.

While we agree with the result issued in *Melbourne*, the facts in the present case are distinguishable. The *Melbourne* nursing home ordinance conferred regulatory and licensing powers on a city agency. In the present case, the Act not only withholds such powers from the regional authority, there has been no grant of power to enforce its recommendations or institute measures to remedy rights violations substantiated by its investigations. (*Human Rights Authority v. Miller* (1984), 124 Ill. App. 3d 701, 464 N.E.2d 833.) In addition, the *Melbourne* ordinance allowed the city agency to adopt whatever rules and regulations it wished without legislative guidance. (*Melbourne Corp. v. Hearing Board on Denial or Revocation of Licenses for Nursing Homes* (1973), 14 Ill. App. 3d 589, 302 N.E.2d 729.) In the present case the Act does not allow the regional authority to promulgate any substantive laws governing the facility. The authority is given only an investigatory jurisdiction over allegations of violations of laws affecting disabled persons enacted by other governmental bodies or as construed by the courts. Ill. Rev. Stat. 1985, ch. 91, par. 701 *et seq.*

■ The plaintiffs' next contention is that the Guardianship and Advocacy Act (Ill. Rev. Stat. 1985, ch. 91½, par. 701 *et seq.*) was unconstitutionally applied in this case. The plaintiffs argue that the Human Rights Authority was basing its definition of "rights" upon private accreditation standards and the opinions, feelings and beliefs of its membership. Examining the record, it can be determined that the Human Rights Authority was basing its determination of rights upon the provisions of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985, ch. 91½, par. 1—102 *et seq.*). The decision to base the determination of rights on the Mental Health Code is within the guidelines set forth in the Act. Ill. Rev. Stat. 1985, ch. 91½, par. 702(h).

■ The plaintiffs' final contention is that the Guardianship and Advocacy Act (Ill. Rev. Stat. 1985, ch. 91½, par. 701) is unconstitutionally vague. Specifically, the plaintiffs contend that the Act fails to provide service providers, such as the plaintiff, with sufficient, definite terms to enable the service provider to conform its conduct to the requirement of law. A legislative enactment is unconstitutionally vague if its terms are so indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Fagiano v. Police Board* (1983), 98 Ill. 2d 277, 456 N.E.2d 27.

■ As stated earlier, the definitions of rights (Ill. Rev. Stat. 1985, ch. 91½, par. 702(h)) and eligible persons (Ill. Rev. Stat. 1985, ch. 91½, par. 702(g)) sufficiently identify the persons and activities subject to the Act's regulations. Although the definitions are broad, the number of persons involved and the complexity of the field required the legislature to include an open-ended definition. Consequently, the granting of the defendants' motion for summary judgment was proper.

For the foregoing reasons the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

WOMBACHER and SCOTT, JJ., concur.