WELLS MANUFACTURING COMPANY, Petitioner-Appellant, v. THE EN-VIRONMENTAL PROTECTION AGENCY, Respondent-Appellee.

First District (5th Division)   No. 1—87—0956

Opinion filed March 9, 1990.

Joseph S. Wright, Jr., of Martin, Craig, Chester & Sonnenschein, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Roma Jones Stewart, Solicitor General, Glenn C. Sechen, Joseph M. Claps, and Diane Rosenfeld Lopata, Assistant Attorneys General, and Glenn E. Carr and Eric P. Dunham, Assistant State's Attorneys, of counsel), for respondent.

Jack W. Roadman, of Illinois Manufacturers' Association, of Chicago, for *amicus curiae.*

JUSTICE MURRAY delivered the opinion of the court:

Wells Manufacturing Company appeals directly to this court from an order of the Illinois Pollution Control Board (Board) affirming the Illinois Environmental Protection Agency's (Agency's) denial of Wells' application to renew its air operating permit. Wells operates an iron castings business (foundry) in an area of Skokie zoned for heavy industrial use. The location is approximately one-half mile from a Morton Grove residential area. The foundry was built in 1947, years before residences were constructed in the area.

One of Wells' processes involves a shell molding operation in which a fine sand is mixed with resin and then packed around a pattern that will be duplicated in cast metal. When heated, this mixture results in the release of a distinctive odor, sometimes compared to that which is emitted from burning rubber. These odors have prompted numerous complaints from residential neighbors over the years and were the basis for a previous enforcement action by the Agency. In the previous action, the Agency charged Wells with violating sections 9(a) and 9(b) of the Illinois Environmental Protection Act (Act) in that it "cause[d] or threaten[ed] or allow[ed] the discharge *** of any contaminant into the environment *** so as to cause or tend to cause air pollution." (Ill. Rev. Stat. 1975, ch. 111½, pars. 1009(a), (b).) The Agency had denied construction and operating permits but did not accuse Wells of any specific discharge that violated any of its rules or regulations. The Board agreed with the Agency and Wells appealed.

This court reversed the Board's order (*Wells Manufacturing Co. v. Pollution Control Board* (1977), 48 Ill. App. 3d 337), and the supreme court affirmed this court (*Wells Manufacturing Co. v. Pollu-*

*tion Control Board* (1978), 73 Ill. 2d 226). In so doing, the supreme court held that where the Agency alleges that air contamination is unreasonable, the Board must consider certain factors set forth in section 33(c) (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c)) in determining the validity of the allegations. Briefly, these criteria are: (1) the degree of injury; (2) the social and economic value of the source; (3) the suitability and priority of the location; and (4) the technical feasibility and economic reasonableness of reducing emissions. After balancing the above factors, the court found that Wells was not guilty of air pollution and ordered the issuance of an operating permit.

Subsequent to the supreme court's decision, in December 1979, Wells applied for and was granted a construction permit for its shell molding and pouring area and applicable air pollution control device. The application consisted of 65 pages and included detailed plans, specifications, emission data and other relevant information. In May 1981, Wells was granted a five-year operating permit with an expiration date of April 9, 1986. In December 1985, the Agency sent a two-page renewal form to Wells in which Wells was required to certify that its equipment remained unchanged or, if changed, to explain those changes. Wells executed the form by certifying that no changes had been made and returned it to the Agency on December 5. The next communication received by Wells from the Agency was dated February 28, 1986, and was notification that Wells' application to renew its operating permit was denied. In the denial letter, the Agency offered to "reevaluate" the denial if Wells so requested in writing and if it submitted nine categories of information, some of which had been submitted with the original application for a construction permit. At the time of the denial, the Agency had on file approximately 250 verified citizen complaints regarding odors.

Wells did not request a reevaluation but filed an appeal with the Board so that, pursuant to the Act, it could continue its operations pending the appeal pursuant to the Act. Hearings before the Board were held in July and September 1986. Testimony was received from complaining citizens and Agency personnel. Wells called no witnesses other than Agency personnel. The Board affirmed the Agency's denial of the permit renewal application in two separate but concurring opinions (Opinion I and Opinion II).

Opinion I stated that the Agency should have considered section 33(c) of the Act in making its determination, but held the error harmless since the Board considered some of the factors. Opinion I apparently relied on the citizens' complaints and dismissed as insufficient reports from an Agency field inspector that the odors were mild to

moderate—some of these tests were conducted on the same days mentioned in the citizens' complaints. Opinion II held that section 33(c) factors need not be considered in the permit renewal process.

On direct appeal to this court, Wells contends that the Agency's and Board's actions were improper pursuant to provisions of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *et seq.*) and the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1001 *et seq.*). The Board and Agency are represented by the Illinois Attorney General and Cook County State's Attorney. Joining in the appeal as *amicus curiae* is the Illinois Manufacturers' Association, which asserts that the Agency has no rules or regulations governing the evaluation of permit renewal applications, thus denying applicants their due process rights.

The Agency argues that since the Board did balance the section 33(c) factors, its decision is not against the manifest weight of the evidence and we must let it stand rather than reweigh the evidence. It further contends that, unlike the earlier *Wells* cases, which concerned an enforcement action, this case concerns a permit renewal and therefore Wells had the burden to prove that it would not pollute the air. Moreover, since the earlier *Wells* cases involved an enforcement action, the section 33(c) factors need not be applied to a permit renewal case.

■ Before issuing a construction permit, the Agency must be assured "[t]he emission source or air pollution control equipment will *** not *** cause a violation of the Act or of this chapter." (35 Ill. Adm. Code §201.155 (1985).) If granted, an applicant must subsequently obtain an operating permit, the application for which must contain the same minimum information as is required for a construction permit and an applicant's certification that the prior information is still accurate. The standard for issuance of an operating permit is essentially the same as that for a construction permit. (35 Ill. Adm. Code §201.160 (1985).) Operating permits are usually for a period of five years. Before expiration of the operating permit, the Agency sends a two-page renewal form requesting certification that previously submitted information is still accurate or, if changes have occurred, a schedule of those changes. Wells argues that since it certified that the information submitted to the Agency for its construction and operating permits was accurate and unchanged at the time of the renewal application, the Agency should have approved the renewal or requested further information before the denial.

Whether Wells is polluting the air in contravention of the Act is not crucial to a determination of this case. All of the arguments asserted by the parties can be resolved by determining whether the

Agency followed the proper procedures in denying Wells' renewal application.

The problem with the Agency's assertions is that Wells did not have an opportunity to present evidence that it was not a polluter before its renewal application was denied. Although the Administrative Code provides a procedure for the Agency to request additional information from a permit applicant (35 Ill. Adm. Code § 201.153 (1985)), the provision is discretionary and was not utilized in this case. As a result, after denial of its renewal application, Wells was forced to either cease operations or appeal to the Board, in which case it could continue operations pursuant to the Administrative Procedure Act. (Ill. Rev. Stat. 1985, ch. 127, par. 1016(b).) According to the denial letter, Wells could have assembled a large volume of information, some of which was already on file with the Agency, and resubmitted its application.

There are several problems with this procedure. The Board's decision was based on the record compiled by the Agency. In its decision, the Board relied on section 39(a) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(a)) in placing the burden of proof on Wells to show that it would not violate the Act or Agency rules and regulations. However, Wells never had an opportunity to proffer evidence that it would not pollute. If the Agency had actually charged Wells with a violation, the Board would have had to conduct a hearing in which the Agency would have the burden of proof which, if carried, would shift the burden to Wells to show that compliance would impose an arbitrary or unreasonable hardship. (Ill. Rev. Stat. 1985, ch. 111½, par. 1031(c).) In deciding whether a violation had occurred, the Board would have had to apply the balancing factors set forth in section 33(c). (Ill. Rev. Stat. 1985, ch. 111½, par. 1033(c).) However, in the present case, the Agency denied the renewal permit without bringing an enforcement action, thus circumventing these, and other, procedures designed to protect an alleged polluter. In effect, it denied Wells the right to operate its business because it may be violating the Act, but never gave it an opportunity to submit information which would disprove the allegation.

This lack of standards by the Agency in processing permit renewals has been previously noted by several courts. In *Celotex Corp. v. Pollution Control Board* (1983), 94 Ill. 2d 101, the Agency denied renewal of Celotex' operating permit *after* requesting additional information. Celotex refused to submit some of the requested information, asserting that the request was untimely and, furthermore, the additional information was unnecessary since its previous permit applica-

tion information had been sufficient for the Agency to issue an operating permit. This latter assertion has also been made by Wells. In affirming the appellate court's reversal and remand of the case, the supreme court decisions found that the Agency's denial was improper since it had been based, in part, on an invalid rule. The supreme court also held that Celotex had no duty to resubmit information that it had already furnished and certified as current: "The permit can be denied only if the information was not already submitted and certified as current, and only if without the information the application was insufficient to show compliance with rules of the Board other than those which were invalidated." (94 Ill. 2d at 128.) No distinction was made between an original operating permit application and a renewal application.

Unlike its actions in *Celotex*, the Agency never requested additional information from Wells until after its renewal application was denied. The Federal district court in *Martell v. Mauzy* (N.D. Ill. 1981), 511 F. Supp. 729, considered the Illinois Environmental Protection Agency's denial of an operating permit to a sanitary landfill operator for new trenches after the Agency had previously issued a developmental permit for those trenches. The Agency denied the operating permit on the basis of certain unadjudicated charges against both the landfill operator and his predecessor. The Agency argued that the landfill operator was not entitled to a due process hearing. The court dismissed this argument, and referring to *Perry v. Sinderman* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694, found that a protected property interest was at stake. The *Martell* court stated that "the operating permit application technically sought a 'new' benefit to supersede the 'expiring' benefit of the development permit." (*Martell*, 511 F. Supp. at 739.) After balancing the parties' interests, the court concluded that the lack of a predenial hearing deprived the landfill operator of his due process of law. 511 F. Supp. at 740.

There is no doubt that denial of an application to renew an operating permit is analogous to the *Martell* situation, and gives rise to the same due process concerns. While we will not go so far as to require a predenial hearing, it is obvious that the manner in which the Agency compiled information denied Wells a fair chance to protect its interest. The Agency asserts that the Board hearing gave Wells an opportunity to challenge the information relied on by the Agency in its permit denial. This is by no means the same as being allowed to submit evidence, sometime during the application process, in order to show that it was not polluting the air. Common sense dictates that a refusal to renew an operating permit on the basis that the applicant

*may* be violating section 9(a) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1009(a)) should be subject to the same or similar standards as those used to deny an operating permit because the applicant is actually charged with violating section 9(a). Moreover, our supreme court in the prior Wells case held that the Board must consider section 33(c) factors (Ill. Rev. Stat. 1985, ch. 111½, par. 1033(c)) when the Agency alleges that air contamination is unreasonable. Although no enforcement action was brought in the present case, Wells was denied renewal of its operating permit on the basis of such allegations.

The Act empowers the Agency to promulgate procedures necessary for the issuance or denial of permits. (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a).) As evidenced by this case, a standard procedure for processing operating permit renewal applications, such as that used by the Agency in issuing or denying an initial operating permit, is lacking.

Accordingly, we must reverse and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

COCCIA, P.J., and GORDON, J., concur.