ESG WATTS, INC., Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.—THE ENVIRONMENTAL PROTEC-TION AGENCY, Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

Third District   Nos. 3—96—0533, 3—96—0562 cons.

Opinion filed February 6, 1997.

Charles J. Northrup (argued) and James M. Morphew, both of Sorling, Northrup, Hanna, Cullen & Cochran, of Springfield, for petitioner.

Daniel P. Merriman (argued), of Springfield, for respondent Illinois Environmental Protection Agency.

Kathleen M. Crowley and Kevin G. Desharnais (argued), both of Chicago, for respondent Pollution Control Board.

JUSTICE BRESLIN delivered the opinion of the court:

ESG Watts, Inc. (Watts), appeals the Illinois Pollution Control Board's (Board's) decision affirming the Illinois Environmental Protection Agency's (Agency's) denial of seven waste stream permit applications. The Agency appeals a Board sanction requiring that it pay Watts' attorney $1,250 for fees incurred because the Agency failed to meet the Board's briefing deadline. We hold that the Board's decision affirming the Agency's denial of the waste permits was not against the manifest weight of the evidence. We therefore affirm the ruling (3—96—0533). However, we hold that the Board lacked the authority to order the Agency to pay Watts' attorney fees, and we thus reverse that ruling (3—96—0562).

## BACKGROUND

Watts owned three landfills in Illinois. Its site known as Taylor

Ridge was located in Rock Island County. The other two sites, known as the Viola Landfill and the Sangamon Valley Landfill, were located in Viola and Springfield, respectively. Only Taylor Ridge was operating at the time of this appeal. Beginning in May 1994 Watts started sending permit applications for its Taylor Ridge site to the Agency. Renewal applications for the acceptance of "generic" waste streams, wastewater treatment sludge from ink, button dust, calcium sulfite cake, and buffing dust waste were all denied. Additionally, the Agency denied two new applications for Taylor Ridge to receive waste sulfur cement and paint sludge. In all, seven applications were denied for the Taylor Ridge site.

■ The Agency based its denials on section 39(i)(1) of the Illinois Environmental Protection Act (Act) (415 ILCS 5/39(i)(1) (West 1994)). Section 39(i)(1) provides:

"(i) Before issuing any RCRA permit or any permit for the conduct of any waste-transportation or waste-disposal operation, the Agency shall conduct an evaluation of the prospective operator's prior experience in waste management operations. The Agency may deny such a permit if the prospective operator or any employee or officer of the prospective operator has a history of:

(1) repeated violations of federal, State, or local laws, regulations, standards, or ordinances in the operation of refuse disposal facilities or sites." 415 ILCS 5/39(i)(1) (West 1994).

As evidence of repeated violations, the Agency cited a circuit court action (People v. Watts Trucking et al., 91—CH—242) and 19 administrative citations against Watts over a seven-year period. The action in the circuit court concerned violations in the Sangamon Valley Landfill in Springfield. It resulted in $350,000 in penalties being levied just six months before the first denial. The judgment was one of the single highest penalties assessed against a landfill owner in Illinois. With regard to the 19 administrative citations, four related to operations at Taylor Ridge, with the most recent of the four taking place in 1989. Furthermore, as another reason for denying the permit applications, the Agency identified "technical difficulties" in six of the seven permit applications. These difficulties included the failure to: properly identify the waste; provide the proper land waste code; provide copies of laboratory papers; and demonstrate that certain tests had been performed.

Watts appealed the seven permit denials to the Board. The Board affirmed the denial of the applications. Although it affirmed the decision, the Board noted that the technical difficulties were not supported by the record and were not dispositive of the issue relating to

section 39(i). However, the Board upheld the decision because Watts' past history of violations clearly "demonstrat[ed] an example of an appropriate use of section 39(i)." The Board also ordered the Agency to pay $1,250 in attorney fees to Watts' attorney for fees incurred in attempting to exclude an untimely Agency brief. Both Watts and the Agency appeal.

This is a relatively short statement of the facts. We will discuss additional facts relevant to the individual issues as each is analyzed.

## ANALYSIS

■ When reviewing a decision of the Illinois Pollution Control Board, the court's function is not to reweigh the evidence or make an independent assessment of the facts. *Environmental Protection Agency v. Pollution Control Board*, 252 Ill. App. 3d 828, 624 N.E.2d 402 (1993). Rather, the court must evaluate the evidence to ascertain whether the Board's decision was contrary to the manifest weight of the evidence. *Environmental Protection Agency v. Pollution Control Board*, 115 Ill. 2d 65, 503 N.E.2d 343 (1986). If any evidence in the record fairly supports the action taken by an administrative agency, the decision must be sustained on appeal. *Farmers State Bank v. Department of Employment Security*, 216 Ill. App. 3d 633, 576 N.E.2d 532 (1991).

### Operator Specificity

Watts asserts that the Agency's review of operations at facilities other than the facility seeking the permits was improper. In its written decision, the Board ruled that section 39(i) is operator-specific and not facility-specific and, therefore, reasoned that the Agency could consider repeated violations at sites other than the Taylor Ridge site when determining whether to grant the waste permits. Watts contends, however, that section 39(i) is facility-specific and that it was inappropriate to consider violations at any sites other than Taylor Ridge because they bore no rational relation to events at Taylor Ridge.

The overriding objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Roser v. Anderson*, 222 Ill. App. 3d 1071, 584 N.E.2d 865 (1991). A court should first look to the statutory language as the best indication of legislative intent. *Veterans Assistance Comm'n v. County Board*, 274 Ill. App. 3d 32, 654 N.E.2d 219 (1995).

■ Section 39(i) provides that the Agency, when determining whether to grant a permit, must evaluate the "prospective operator's prior experience in waste management operations." 415 ILCS 5/39(i) (West 1994). The Agency may deny a permit because of "repeated

violations *** in the operation of refuse disposal *facilities or sites.*" (Emphasis added.) 415 ILCS 5/39(i)(1) (West 1994).

The language of the statute does not limit the review of violations to the facility seeking permits. Rather, we find that the statute is clear in providing that the Agency may consider violations at other sites operated by the owner. Therefore, we hold that section 39(i) is operator-specific, not facility-specific.

### Board's Standard of Review

Watts argues that the Board applied an improper standard of review when it reviewed the Agency's denials. It contends that since section 39(a) of the statute (415 ILCS 5/39(a) (West 1994)) provides that the Agency shall issue a permit upon proof that a facility will not cause a violation of the Act, the true question in front of the Board is whether the Agency acted in an arbitrary and capricious manner. We disagree that this is the Board's standard of review.

■ Generally, the Board does not apply the arbitrary and capricious standard to decisions made by the Agency. Rather, the Board reviews the information that the Agency relied on in making its decision. See *Alton Packaging Corp. v. Pollution Control Board*, 162 Ill. App. 3d 731, 516 N.E.2d 275 (1987). Thereafter, the Board places the burden on the petitioner to prove that it is entitled to a permit and that the Agency's reasons for denial are either insufficient or improper. *ESG Watts, Inc. v. Illinois Environmental Protection Agency*, Ill. Pollution Control Bd. Op. 94—243 (March 21, 1996).

To require the Board to review the Agency decision under an arbitrary and capricious standard in this case would essentially remove the procedural safeguards of the administrative appeal process. The decision of the Agency would, in effect, be insulated, because the Board's review would be limited to a determination of whether the action was arbitrary rather than appropriate and supported by the evidence. Moreover, we are concerned that, due to the time restraints placed on the Agency, it cannot hold full hearings to develop the issues of the case. Accordingly, it is essential that the Board provide hearings and allow the petitioner an opportunity to challenge the validity of the decision made by the Agency. To require another standard of review would interrupt the administrative continuum which becomes complete after the ruling of the Board. *Environmental Protection Agency v. Pollution Control Board*, 138 Ill. App. 3d 550, 486 N.E.2d 293 (1985), *aff'd*, 115 Ill. 2d 65, 503 N.E.2d 343 (1986). Therefore, we hold that the Board's process of reviewing the analysis by the Agency and placing the burden on the applicant to demonstrate that the denial was unwarranted under section 39(i) is a proper method of review.

## Predetermination of Permit Denials

Watts contends that the Agency exercised an improper predetermination because the Agency made its decision to deny Watts' application before it received a response to letters sent to Watts informing it of the prospective reasons for denials and requesting an explanation as to why the denials would be improper.

■ In *Wells Manufacturing Co. v. Environmental Protection Agency*, 195 Ill. App. 3d 593, 552 N.E.2d 1074 (1990), the court held that it was improper for the Agency to deny an applicant a permit based upon alleged violations of the Act without providing the applicant an opportunity to submit information that would disprove the alleged violations. After the *Wells* decision, the Agency began to send so-called "*Wells* letters" to applicants to provide them with an opportunity to respond to potential grounds for denial before a denial letter is issued.

Watts contends that the sending of *Wells* letters in this case was a "sham" because the Agency had already decided to deny the applications before the responses were mailed back. Watts points to the permit reviewer's notes dated before Watts' response to all the *Wells* letters were even returned in this case. The reviewer noted, with respect to the last two permit applications, that "[s]ince the application is being denied anyway due to past adjudicated violations, I included this [technical] deficiency as a denial point." Watts asserts that this notation is clear and unequivocal evidence that the Agency made up its mind to deny the applications before Watts responded to the *Wells* letter, thus denying Watts a meaningful opportunity to be heard.

The Board, however, found that sufficient evidence was presented to the contrary. Specifically, the Board accepted the permit reviewer's testimony that he reviewed the responses and discussed them with others at the Agency. We find that the Board's decision was not against the manifest weight of the evidence.

## Enforcement Guidelines and Equal Protection

■ Watts argues that the Agency has not developed any guidelines for the enforcement of section 39(i) and thus cannot meet its statutory obligation to investigate the conduct of applicants. Watts also contends that the result allowed for the discretionary application of section 39(i) in violation of the equal protection clause (U.S. Const. amend. XIV).

Although the Agency has not adopted any procedures with respect to section 39(i), it does not follow that the Agency cannot properly evaluate applicants. The Agency cannot be expected to establish procedures for every conceivable circumstance. See *Strube v.*

*Pollution Control Board*, 242 Ill. App. 3d 822, 610 N.E.2d 717 (1993) (statute that authorized Agency to adopt reasonable and necessary rules for the administration of underground storage tanks did not require it to promulgate rules for every circumstance). The Agency is only required to have reasonable and necessary rules when it adopts procedures. *Strube*, 242 Ill. App. 3d at 829, 610 N.E.2d at 722.

In this case, although no specific written procedures were followed to evaluate the permit applications, we find that the evaluation process was sufficient. The permit reviewer made inquiries to the different sections of the Agency, and the field operating section returned comments. *Wells* letters were also sent out. From the information gathered, the reviewer was able to ascertain that Watts had a record of serious and repeated violations to which section 39(i) applied. Furthermore, the decision was reviewed by the Board, providing the safeguards of due process. See *Strube*, 242 Ill. App. 3d at 829, 610 N.E.2d at 722, citing *Environmental Protection Agency v. Pollution Control Board*, 115 Ill. 2d 65, 503 N.E.2d 343 (1986).

■ As for Watts' equal protection claim, we find that it is without merit. Equal protection is denied when state officers enforce a statute in a discriminatory manner but only if the discrimination is intentional and purposeful. *Beverly Bank v. Board of Review*, 117 Ill. App. 3d 656, 453 N.E.2d 96 (1983). To establish a discriminatory purpose, plaintiff must show more than an arbitrary application of statutes and rules. *Beverly Bank*, 117 Ill. App. 3d at 664, 453 N.E.2d at 101. Plaintiff must show that the decision maker singled out a particular group for disparate treatment and acted, at least in part, to cause adverse effects on the identifiable group. *Beverly Bank*, 117 Ill. App. 3d at 664, 453 N.E.2d at 101.

Watts has not shown that it is part of an identified group. Additionally, Watts has not demonstrated that the Agency acted to cause adverse effects. On the contrary, the effects of the denials were those sought by the statute, and there was no demonstration of a discriminatory purpose. Moreover, although Watts has suggested that a lack of procedures may lead to arbitrary enforcement, Watts has not established that there was an arbitrary application of the statute in its case. Therefore, we reject this argument.

## Delegation of Authority

■ Watts argues that the legislature's delegation of discretionary authority to the Agency in section 39(i) is invalid. Although Watts failed to raise this issue before the Board, we find that it is central to this case and should be reviewed on appeal. See *Augsburg v. Frank's Car Wash, Inc.*, 103 Ill. App. 3d 329, 431 N.E.2d 58 (1982) (reviewing

court may decline to apply waiver doctrine in order to achieve a just result).

Watts asserts that the legislature provided no intelligible standards for the Agency to follow when enforcing section 39(i). It complains that no guidance is provided to the Agency other than an evaluation of the prospective operator's prior experience in waste management. It argues that elements such as recency, severity, or good-faith efforts to comply are essential points to consider when determining the status of an applicant.

Where the legislature vests discretionary authority in an administrative agency, intelligible standards must be provided to guide the exercise of the agency's discretion. *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 603 N.E.2d 489 (1992). Failure to provide such standards renders the statute void. *Balmoral*, 151 Ill. 2d at 391, 603 N.E.2d at 498. A delegation of legislative authority is constitutional only if the legislature provided sufficient identification of: (1) the persons and activities potentially subject to regulation; (2) the harm sought to be prevented; and (3) the general means intended to be available to the administrator to prevent the identified harm. *Friendship Facilities, Inc. v. Region 1B Human Rights Authority*, 167 Ill. App. 3d 425, 521 N.E.2d 578 (1988).

We find that the legislature provided appropriate standards to guide the exercise of the Agency's discretion. Section 39(i) provides that "prospective operator[s]" are the parties subject to regulation, and the activity subject to regulation is the obtaining of the permits. 415 ILCS 5/39(i) (West 1994). The harm to be prevented is that of granting a prospective operator a permit when the operator's past conduct suggests that granting a permit may create a risk. See 415 ILCS 5/39(i) (West 1994). The means available to prevent the harm is clearly the denial of the application following an investigation into the applicant's background. 415 ILCS 5/39(i) (West 1994). The investigation may inquire as to: (1) repeated violations in the operation of refuse disposal sites; (2) a conviction of a felony; or (3) proof of gross carelessness in handling or disposing of any hazardous waste. 415 ILCS 5/39(i) (West 1994). Whether the Agency should be required to consider factors such as recency, severity, or good-faith efforts to comply is an issue that is more appropriately left to the legislature.

## Consideration of Nonadjudicated Violations

The Agency permit reviewer learned of alleged violations during an investigation performed under the authority given by section 39(i). The alleged violations involved Watts' failure to submit a "significant modification" application which was required for a modifica-

tion planned at its Taylor Ridge site. The information was acquired from the Agency's field operation section, which recommended to the reviewer that the applications be denied due to the alleged violation as well as other adjudicated violations.

■ Watts contends that the Agency acted improperly when it considered the alleged violations. It argues that, since section 39(i) only permits the Agency to consider past adjudicated violations, its reliance on the nonadjudicated violation was improper and mandates a reversal. If the Board had relied solely on the nonadjudicated violation, we would agree with Watts on this point, but the record does not bear out that contention.

While the permit reviewer testified that he considered the field operating section comments when he examined the permit applications, the Agency did not include the alleged violation in its denial letters, which were sent to Watts. The Board has determined that it is the denial letter that frames the issue in a permit appeal to the Board. See *Pulitzer Community Newspapers v. Environmental Protection Agency*, Ill. Pollution Control Bd. Op. 90—142 (December 20, 1990); *Centralia Environmental Services, Inc. v. Environmental Protection Agency*, Ill. Pollution Control Bd. Op. 89—170 (May 10, 1990). Because the reasons set forth in the denial letters were sufficient to support the Agency's actions, the permit reviewer's consideration of the unadjudicated violations was not prejudicial and did not taint the decision. Thus, while it may have been improper to consider the unadjudicated violations (see *Martell v. Mauzy*, 511 F. Supp. 729 (N.D. Ill. 1981) (due process limitations applied to Agency's decision denying renewal of operating permits based on alleged violations)), a reversal is not necessary because there was a sufficient basis for the Agency's actions.

## Permitting Process as Enforcement Tool

■ Watts claims that the denial of the permits was an impermissible use of the permitting process as an enforcement tool. In support of its argument, Watts cites *Environmental Protection Agency v. Pollution Control Board*, 252 Ill. App. 3d 828, 624 N.E.2d 402 (1993). In that case, this court affirmed the Board's finding that the Agency improperly used the permit denial process as an enforcement tool because the evidence demonstrated that the Agency denied permit applications based on alleged violations of the Act. In the present case, however, the Board found that the record did not support Watts' contention that the Agency relied on unadjudicated violations when it made its decision to deny the permit applications. We conclude that the Board's findings are reasonable and not against the manifest

weight of the evidence. Therefore, we hold that the denials were not an impermissible use of the permitting process as an enforcement tool.

## Sufficiency of Evidence

■ Watts argues that the Board's ruling is contrary to the manifest weight of the evidence because the Board could not properly rely on the circuit court action concerning the Sangamon Valley Landfill as well as the 19 administrative citations. Watts points to the Board's decision where it stated that "the seriousness of the violations that occurred at the Sangamon Valley Landfill, together with the 19 adjudicated administrative citations against Watts, are sufficient cause to justify the Agency's denials in this case." Watts asserts that since this conclusion rests equally upon the Sangamon Valley occurrence and the 19 administrative citations, if the Board's findings concerning one or the other are against the manifest weight of the evidence, then the decision is against the manifest weight of the evidence.

We reject this argument because the Board did not state that it had relied equally upon both factors. Moreover, considering the violations separately, we find that there was sufficient evidence of past adjudications to support the Board's decision.

## Adequacy of Notice

■ Watts contends that the Agency failed to provide sufficient notice of the reasons for denial of the permits. However, Watts failed to raise this issue in the proceeding before the Board. Hence, it waived the right to raise the issue on appeal. See *Miller v. Pollution Control Board*, 267 Ill. App. 3d 160, 642 N.E.2d 475 (1994) (failure to object during administrative proceeding waives right to raise the issue on appeal).

## Application of Section 745.141(b) of the Administrative Code

■ Because no administrative procedures were adopted by the Agency to enforce section 39(i), the Board employed section 745.141(b) of the Illinois Administrative Code (35 Ill. Adm. Code § 745.141(b) (Supp. 1987)), the regulations implemented for the enforcement of section 22.5 of the Act (415 ILCS 5/22.5 (West 1994)). Section 22.5 establishes the standards for certification of personnel operating disposal facilities and sites. The provisions of section 22.5 are virtually identical to section 39(i) in that certification can be denied to prospective operators due to repeated violations, convictions, and gross carelessness. 415 ILCS 5/22.5 (West 1994). However, section 745.141(b) permits certain mitigating factors to be taken into account

when enforcing section 22.5. Specifically, the Agency may consider the severity of the conduct, how recently the event took place and the degree of control exerted over the disposal operations by the applicant. 35 Ill. Adm. Code § 745.141(b) (Supp. 1987).

Watts argues that the Board's review pursuant to section 745.141(b) (35 Ill. Adm. Code § 745.141(b) (Supp. 1987)) caused it to reach an erroneous decision. Specifically, Watts contends that the Board's findings that the adjudicated violations were sufficiently severe and recent were erroneous.

Contrary to Watts' assertions, the Board could reasonably infer the severity of Watts' past violations from the record and conclude that the citations were sufficiently recent. Given the apparent severity, recency and quantity of violations committed, we hold that the Board's decision was not against the manifest weight of the evidence.

## Sanction Authority of the Board

After a hearing on the consolidated permit appeals in December 1995, Watts filed its required post-hearing brief on January 12 pursuant to an arranged briefing schedule. The Agency failed to file its brief by January 26, as called for by the schedule. Eventually, on February 7, 1996, the Agency moved to file the post-hearing brief *instanter*. Watts had moved to exclude the brief; however, the Board determined that the case was one of first impression and briefing by both parties was desirable. The Board thus directed the Agency to file its brief and to pay a sanction of $1,250 to Watts for the legal expenses incurred by Watts in its attempt to exclude the Agency's brief.

At issue is whether the Board had the authority to impose a sanction of attorney fees.

In cases other than where a court exercises its inherent powers and issues a contempt citation, specific authority to award attorney fees must be granted. See *Cummings v. Beaton & Associates, Inc.*, 249 Ill. App. 3d 287, 618 N.E.2d 292 (1992). In the absence of statutory authority or an agreement specifically authorizing them, attorney fees and other ordinary expenses of litigation may not be awarded. *Sanelli v. Glenview State Bank*, 126 Ill. App. 3d 411, 466 N.E.2d 1119 (1984); *Chicago Title & Trust Co. v. Walsh*, 34 Ill. App. 3d 458, 340 N.E.2d 106 (1975). Statutes that allow for the recovery of attorney fees must do so by specific language. *Miller v. Pollution Control Board*, 267 Ill. App. 3d 160, 642 N.E.2d 475 (1994); *State Farm Fire & Casualty Co. v. Miller Electric Co.*, 231 Ill. App. 3d 355, 596 N.E.2d 169 (1992). When the language of the statute does not specifically indicate that "attorney fees" are recoverable, the courts

will not give the language an expanded meaning. See *Qazi v. Ismail*, 50 Ill. App. 3d 271, 364 N.E.2d 595 (1977), citing *Waller v. Board of Education of Century Community Unit School District*, 28 Ill. App. 3d 328, 328 N.E.2d 604 (1975) (courts consistently deny recovery of attorney fees where such language as "attorney fees" has not been included in the statute); *State Farm Fire & Casualty Co.*, 231 Ill. App. 3d at 359-60, 596 N.E.2d at 171-72.

■ The Board argues that it had the authority to impose the sanction under section 101.280(a)(7) (35 Ill. Adm. Code § 101.280(a)(7) (1991)). Section 101.280(a)(7) provides:

"(a) If a party or any person unreasonably refuses to comply with any provision of 35 Ill. Adm. Code 101 through 120 or fails to comply with any order entered by the Board or the hearing officer ***, the Board will order sanctions. In addition to remedies elsewhere specifically provided, the sanctions may include, among others, the following:

* * *

(7) That the offending person pay the amount of reasonable expenses incurred in obtaining an order pursuant to this Section." 35 Ill. Adm. Code § 101.280 (1991).

In support of its argument, the Board cites *Grigoleit Co. v. Pollution Control Board*, 245 Ill. App. 3d 337, 613 N.E.2d 371 (1993). In *Grigoleit*, the petitioner sought sanctions against the Agency because it had repeatedly refused to issue a permit in contradiction to a Board order to do so. The matter had been previously remanded to the Agency twice in order that the permit could be issued. When the matter arrived in front of the Board a third time, the Board ordered that the permit could be issued and, as a sanction, required that the permit be issued without conditions. On appeal, the fourth district court of appeals held that the Board's sanction against the Agency was insufficient and remanded the case back to the Board with directions to award attorney fees to the applicant. *Grigoleit*, 245 Ill. App. 3d at 348, 613 N.E.2d at 378.

We do not find *Grigoleit* persuasive. The *Grigoleit* court reasoned that attorney fees were appropriate based on the Board's broad discretion to impose sanctions (see *Grigoleit*, 245 Ill. App. 3d at 346, 613 N.E.2d at 377, citing *Environmental Protection Agency v. Celotex Corp.*, 168 Ill. App. 3d 592, 522 N.E.2d 888 (1988)), and the language in section 101.280(a)(7). However, subsection (a)(7) does not specifically mention attorney fees. Although subsection (a)(7) permits the recovery of "reasonable expenses incurred in obtaining an order" (35 Ill. Adm. Code § 101.280(a)(7) (1991)), it does not specifically state that "attorney fees" are an available remedy.

The Board insists that the requirement of specificity in the statute is limited to circumstances in which a party has "prevailed" in the litigation. We disagree.

In cases where the inherent power of a court is not exercised, the absence of specific authority permitting an award of attorney fees prevents the shifting of fees to another party. This is the case regardless of whether or not the litigation has ended on its merits and one litigant has prevailed. See 155 Ill. 2d R. 137 (attorney fees available for papers signed in violation of rule); 5 ILCS 100/10—55 (West 1994) (untrue allegations made by administrative agency without reasonable cause subjects agency to burden of paying opposing party's reasonable attorney fees); *Bank of Waukegan v. Epilepsy Foundation*, 163 Ill. App. 3d 901, 516 N.E.2d 1337 (1987) (court lacked statutory authority to award attorney fees where one party requested continuance on date set for trial); *Freeman v. Myers*, 191 Ill. App. 3d 223, 547 N.E.2d 586 (1989) (attorney fees improperly awarded where attorney's actions caused mistrial because no statutory authority existed); *Sanelli v. Glenview State Bank*, 126 Ill. App. 3d 411, 466 N.E.2d 1119 (1984) (party seeking fees for discovery violation failed to base motion on specific statutory authority); *Central Illinois Public Service Co. v. Westervelt*, 35 Ill. App. 3d 777, 342 N.E.2d 463 (1976), *aff'd*, 67 Ill. 2d 207, 367 N.E.2d 661 (1977) (request for fees denied after mistrial was granted due to absence of statutory authority or agreement between parties). Therefore, as no specific statutory authority or agreement supported the Board's award of attorney fees, we hold that the Board lacked the authority to order the Agency to pay Watts' attorney fees as a sanction.

For the foregoing reasons, the decision of the Illinois Pollution Control Board is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

LYTTON, P.J., and HOMER, J., concur.