THE ESTATE OF BENJAMIN DOWNS, Plaintiff-Appellant, v. WAYNE L. WEBSTER, Defendant-Appellee.

Third District   No. 3—98—0744

Opinion filed September 3, 1999.

Walwyn M. Trezise (argued), of Fairbury, for appellant.

Christopher W. Kanthak (argued), of Galesburg, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

The estate of Benjamin Downs (estate), through its executor, Caroline Downs, instituted an action in replevin against defendant Wayne L. Webster, d/b/a Galesburg Mini-Storage. Caroline sought recovery of property wrongfully placed in Webster's storage facility by the estate's original executor, Thomas Downs. The trial court found that, pursuant to section 3 of the Self-Service Storage Facility Act (Act) (770 ILCS 95/3 (West 1996)), and a lease agreement entered into between Webster and Thomas, Webster had an existing lien for past rent, attorney fees and costs on all property that Thomas placed in the facility. Caroline appeals, claiming that (1) Webster cannot have a lien on "stolen" property, and (2) attorney fees were improper. In addition, Webster contends that he is entitled to collect rent that has accrued during the pendency of this appeal. We affirm in part and reverse in part.

## I. FACTS

Benjamin Downs died in January 1988. Thomas was appointed executor of Benjamin's estate; he was subsequently removed as executor in December 1989 amidst allegations of improper conduct. Caroline then became executor of the estate.

One month after his removal, Thomas entered into a lease with Webster, owner of Galesburg Mini-Storage, for rental of a storage unit. Under the terms of the lease, Thomas agreed to pay "all costs, includ-

ing attorney fees, incurred in collecting any money due hereunder or enforcing the terms of this lease."

Upon discovering that Thomas had stored property belonging to the estate in Webster's storage facility, Caroline, as executor, filed an action in replevin against Webster. After a bench trial, the court found Webster to have a lien on all property contained in the storage facility for past rent, attorney fees and court costs. The court ordered Webster, upon payment of the lien, to return any items belonging to the estate. Caroline appeals.

## II. LIEN CLAIM

■ Citing general common law principles,[1] Caroline claims that "one cannot derive an interest in property, be it title to property or a lien over a property[,] from a thief." Accordingly, Webster cannot have any interest in the estate property because Thomas had no ownership rights over the property when he placed it in storage. Webster responds that a lien on the property is appropriate under section 3 of the Act.

### 1

■ Liens originate from a variety of sources, including the common law, statute and equity. D. Overton, The Law of Liens § 38, at 40 (Banks & Bros. ed. 1883). The common law right to impose a lien or seize property for the compulsion of rental payments dates back to feudal times. L. Jones, The Law of Liens § 561, at 347 (2d ed. 1894). At common law, innkeepers could maintain a lien over property that guests brought to the inn. There were two opposing theories, however, regarding whether an innkeeper could secure a lien on stolen property. D. Overton, The Law of Liens § 122, at 149 (Banks & Bros. ed. 1883). Ohio's common law, for example, would not allow an innkeeper's lien under such circumstances. See *M&M Hotel Co. v. Nichols*, 5 Ohio Op. 387, 32 N.E.2d 463 (1935). In contrast, Overton, in his treatise on lien law, explained:

> "If property *** [is] brought by a guest to an inn, at which he obtains accommodations, and leaves the property in custody of the innkeeper, it seems the lien will attach thereto, whether it belong to a guest or *** even if it had been stolen by the guest. For the innkeeper is bound to receive and entertain the guest, and when unaccompanied by any suspicious circumstances, would not be justified in inquiring into the title to the property delivered by the

---

[1]See, for example, *Bauman Loan Co. v. Hatowsky*, 107 Ill. App. 181 (1903), and *People ex rel. Russell v. Michigan Avenue Trust Co.*, 233 Ill. App. 428 (1924).

guest to his possession." D. Overton, The Law of Liens § 123, at 150 (Banks & Bros. ed. 1883), citing *Yorke v. Greenaugh*, 2 Ld. Raym. 866 (1702).

Innkeepers' rights are no longer within the province of the common law, having been replaced by statute, "with some modifications and extensions," in all states. J. Sherry, Law of Innkeepers § 20:20, at 605 (rev. ed. 1981).

■ Landlord-tenant rights also evolved from the common law. While the common law did not allow a landlord, in the absence of a statute or agreement, to acquire a lien over a tenant's property when the tenant defaulted on rental payments (24 Ill. L. & Prac. *Landlord & Tenant* § 461, at 558 (1980)), the common law did provide that "all chattels found upon the demised premises were prima facie distrainable, whether they belonged to the tenant or not." L. Jones, The Law of Liens § 561, at 347 (2d ed. 1894); see also *Gray v. Rawson*, 11 Ill. 527, 528 (1850).

Like innkeepers' rights, landlords' rights have been codified. However, a "landlord's statutory lien for rent does not generally attach to goods of other persons which happen to be upon the demised premises." L. Jones, The Law of Liens § 566, at 350 (2d ed. 1894).

2

■ Although the common law, in many instances, has been supplanted by statute, its history is reflected throughout Illinois statutory law and remains informative. In the Act, the Labor and Storage Lien Act (770 ILCS 45/1 (West 1996)), and the Labor and Storage Lien (Small Amount) Act (770 ILCS 50/1 (West 1996)), the Illinois legislature, like the common law, has followed two distinct approaches to liens on stored property and the rights of third parties.

A

Section 3 of the Act provides:

"The owner of a self-service storage facility and his heirs, executors, administrators, successors, and assigns have a lien upon all personal property located at a self-service storage facility for rent, labor, or other charges, present or future ***." 770 ILCS 95/3 (West 1996).

In drafting the Act, no exception was made for property wrongfully placed in a storage facility. Instead, the legislature stated that an owner of a self-service storage facility has a lien "upon all personal property located" within.

The broad language of section 3 establishes that an owner of a self-service storage facility may have a lien on all property stored within the facility, even property stored there by a person having no

possessory or ownership rights over the property. This interpretation is supported by *National Malted Food Corp. v. Crawford*, 254 Ill. App. 415 (1929), a case that addressed the scope of "An Act for the protection of Innkeepers" (Innkeepers' Act) (Ill. Rev. Stat. 1927, ch. 71, par. 2). The Innkeepers' Act provided that "[e]very hotel proprietor shall have a lien upon all baggage and effects brought into said hotel by his guests for any and all proper charges due him from such guests for hotel accommodations." Ill. Rev. Stat. 1927, ch. 71, par. 2. The court construed this provision to mean that an innkeeper can have "a lien on all the property brought by the guests into the hotel, even though the innkeeper has notice that such property belongs to another." *National Malted Food*, 254 Ill. App. at 418. The statutory language at issue in *National Malted Food* is similar to the language of section 3 of the Act. We find no reason to interpret section 3 any narrower than the Innkeeper's Act.

### B

■ Had the legislature intended a less expansive application, it could have drafted the Act with qualifying language similar to that of the Labor and Storage Lien Act or the Labor and Storage Lien (Small Amount) Act. Both the Labor and Storage Lien Act and the Labor and Storage Lien (Small Amount) Act require a person storing personal property to have legal authority over the property as a condition precedent to imposition of a lien.

Section 1 of the Labor and Storage Lien Act provides:

> "Every person, firm or corporation who has *** furnished storage for said chattel, at the request of its owner *** or authorized agent of the owner, or possessor thereof, shall have a lien upon such chattel beginning on the date of the commencement of *** such storage ***." 770 ILCS 45/1 (West 1996).

Section 1 of the Labor and Storage Lien (Small Amount) Act provides:

> "Every person *** furnishing storage for any chattel at the request of or with the consent of its owner, authorized agent of the owner, or lawful possessor thereof, in the amount of $2,000 or less, shall have a lien upon such chattel beginning upon the date of commencement of *** furnishing of storage ***." 770 ILCS 50/1 (West 1996).

Rather than utilizing restrictive language similar to that of the Labor and Storage Lien Act and the Labor and Storage Lien (Small Amount) Act, the legislature, in this instance, resolved to use more expansive language. That language must be given effect. See *People v. Hicks*, 164 Ill. 2d 218, 222 (1995). Any interpretation inconsistent with the legislature's express intent shall be avoided. The trial court's finding of a lien on all property which Thomas has stored in Webster's facility, even property wrongfully placed there, was appropriate.

## III. ATTORNEY FEES

Caroline next contends that Webster is not entitled to attorney fees. Webster responds that attorney fees are recoverable under section 3 of the Act.

■ A court may only award attorney fees if they are expressly authorized by statute or by agreement of the parties. *In re Marriage of Magnuson*, 156 Ill. App. 3d 691, 700, 510 N.E.2d 437, 443 (1987). Statutes that allow for recovery of attorney fees must do so by specific language. *ESG Watts, Inc. v. Pollution Control Board*, 286 Ill. App. 3d 325, 337, 676 N.E.2d 299, 307 (1997). When the language does not specifically state that "attorney fees" are recoverable, courts will not give the language an expanded meaning. *ESG Watts, Inc.*, 286 Ill. App. 3d at 337-38, 676 N.E.2d at 307.

■ Here, attorney fees were improper. First, they are not authorized by statute. Section 3 of the Act does not contain an attorney fee provision. Rather, it allows recovery for "rent, labor, or other charges, present or future, in relation to the personal property, and for expenses necessary for its preservation, or expenses reasonably incurred in its sale or other disposition pursuant to this Act." 770 ILCS 95/3 (West 1996). This language is insufficient to support an attorney fee award.

Second, the parties did not contract for attorney fees. Although the lease agreement between Thomas and Webster contains an attorney fee provision, Thomas entered that agreement individually, not as executor. Neither Caroline nor any other person representing the estate was a party to the agreement. Accordingly, the attorney fee award is reversed.

## IV. ADDITIONAL RENT

■ Webster claims that he is entitled to recover additional rent and fees that have accumulated through the course of plaintiff's appeal. Webster asks that we remand for a hearing to determine the amount that he is entitled to collect.

Webster may be entitled to additional rent that has accrued during the course of this appeal. However, we decline Webster's request that we remand this cause to the trial court. If the parties are unable to resolve this issue without court action, Webster may institute a separate proceeding.

## V. CONCLUSION

The judgment of the circuit court of Knox County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

HOLDRIDGE, P.J., and BRESLIN, J., concur.